***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Rowell with minor modifications.
 *********** ORDER
Defendants filed a Motion to Dismiss plaintiff's appeal pursuant to Rule 701 for plaintiff's failure to timely state her grounds for appeal or file a Form 44 Application for Review. *Page 2 
Although untimely filed, plaintiff did submit a Form 44 Application for Review on March 6, 2008 wherein plaintiff set forth her grounds for appeal with particularity.
Based upon a careful review of the record, defendants' Motion to Dismiss is hereby DENIED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. The Phoenix Insurance Company was the carrier on the risk for defendant-employer.
4. Plaintiff's average weekly wage will be stipulated to by the parties following the evidentiary hearing. The parties failed to provide said stipulation following the evidentiary hearing.
5. Plaintiff sustained an injury on or about November 28, 2004, with the exact date to be determined by the Commission.
6. The injury arose out of and in the course of employment and is compensable.
7. The parties stipulated the following into evidence
 a. Stipulated Exhibit 1 — Pre-Trial agreement, as modified and initialed by the parties; *Page 3 
 b. Stipulated Exhibit 2, medical records;
 c. Stipulated Exhibit 3, Industrial Forms and discovery. ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On November 28, 2004, plaintiff was employed by defendant-employer in its Clinton food processing plant as a trimmer in the hog bellies section.
2. On November 28, 2004, plaintiff was standing on an elevated platform which was bumped by a tank being pulled by co-worker, Steve Carter, causing plaintiff to lose her balance. Plaintiff began to fall backwards, but she braced herself and did not fall down.
3. Plaintiff did not seek treatment immediately, but rather reported to defendant-employer's nursing station approximately 1 ½ hours later, where she reported that her platform was hit by a pallet, that she caught her balance, and that she felt pain between her shoulder blades. After lunch that day, plaintiff went to the emergency room at Sampson Regional Medical Center. The emergency room doctor recorded plaintiff's complaints of upper back and neck pain. In the medical record, the emergency room doctor specifically circled the upper back area on the human diagram as plaintiff's reported pain location. Likewise, the triage nurse noted plaintiff's pain complaint as being limited to her upper back. Plaintiff was diagnosed with a dorsal/thoracic contusion/strain, prescribed Lortab and Flexeril, and written out of work until December 1, 2004.
4. Plaintiff filed a Form 18 on December 30, 2004, describing her injured body parts as her neck, shoulders, and upper arms, but specifically omitting her low or mid back. *Page 4 
5. Defendants accepted plaintiff's claim on a Form 60 shortly thereafter, dated January 6, 2005.
6. On November 29, 2004, plaintiff presented to Physician's Assistant (hereinafter "PA") Paul Layman at Clinton Urgent Care where she again reported the history of almost falling but catching herself the day prior and the sudden onset of pain between her shoulder blades, in her neck, and right arm.
7. Plaintiff has a history of treatment for similar upper back and neck pain during 2004, which preceded the November 28, 2004 accident. On September 27, 2004, plaintiff had treated with Dr. Diane Harris at Clinton Urgent Care for similar symptoms. Previously plaintiff had also seen Dr. James Maultsby, the urgent care orthopedist who made site visits to defendant-employer, for symptoms of neck, shoulder, and arm pain in April 2004, and again in May 2004.
8. On November 29, 2004, PA Layman's diagnosis was a "neck and upper back strain." PA Layman wrote sedentary work restrictions of no work above shoulder level and a 10-pound lifting restriction for the next 7 days. Defendant-employer accommodated these restrictions by placing plaintiff in a packing position sitting in front of a table.
9. On December 2, 2004, plaintiff presented to Dr. Maultsby, defendant-employer's on-site physician for re-evaluation. Dr. Maultsby noted that plaintiff has a history of recurrent neck pain in the past and had been taking anti-inflammatory medicines regularly. On physical examination, the physician found no neurological deficits. Dr. Maultsby diagnosed plaintiff with degenerative joint disease of the cervical spine and recommended that she continue the use of her anti-inflammatories and begin range of motion exercises. Dr. Maultsby noted that plaintiff could return to regular work and plaintiff returned to her job on the trimming line. *Page 5 
10. On December 24, 2004, plaintiff returned to Clinton Urgent Care where she was treated by Dr. Harris, who has previously treated plaintiff in September 2004 for similar symptoms. On this date, plaintiff reported a re-aggravation of her upper back and neck pain with right arm radiation. Dr. Harris made a diagnosis of cervical spine strain with right radiculopathy and wrote a light duty work note for no work above shoulder level and no lifting more than 10 pounds until follow-up on December 31, 2004.
11. On December 31, 2004, plaintiff returned to Dr. Harris at Clinton Urgent Care with continued complaints of upper back and neck pain. Dr. Harris prescribed Vicodin and ordered physical therapy but made no mention of work restrictions.
12. On January 6, 2005, plaintiff presented to Dr. Maultsby at defendant-employer's medical clinic. According to Dr. Maultsby, plaintiff gave him 3 different histories as to how the instigating incident on November 28, 2004 occurred (that she almost fell but caught her balance, that she fell and struck her back, and that she fell to the floor), but that the most consistent history was that she did not actually fall but caught herself. Dr. Maultsby examined plaintiff and found neck discomfort with right arm radiation.
13. In his January 6, 2005, medical record, Dr. Maultsby specifically recorded that plaintiff's neck pain was not work related. Dr. Maultsby explained in his deposition that due to the various conflicting histories he was given by plaintiff, due to her pre-existing problems with neck pain, and based on his conversations with Dr. Harris, it was his impression that the mechanism of the accident was not sufficient to cause the ongoing pain that she was having at that time.
14. On January 17, 2005, plaintiff returned to Dr. Harris at Clinton Urgent Care and reported that her neck was better but she still had upper back pain. Dr. Harris noted that *Page 6 
plaintiff's pain was in her mid-thoracic spine. Dr. Harris noted her diagnosis as cervical spine strain resolved and musculoskeletal thoracic spine pain, and wrote a note taking plaintiff out of work from January 17, 2005, through January 24, 2005.
15. On January 24, 2005, plaintiff returned to Dr. Harris at Clinton Urgent Care and reported continued pain in her upper back, and Dr. Harris ordered a CT scan of plaintiff's thoracic spine.
16. That CT scan was performed at Sampson Regional Medical Center on January 27, 2005, and revealed only mild degenerative changes and no evidence of a thoracic aortic aneurysm. The radiologist noted that the thoracic CT scan showed no significant changes from a prior June 2004 chest x-ray and revealed nothing acute.
17. On February 3, 2005, plaintiff again presented to Dr. Maultsby at defendant-employer's medical clinic. Dr. Maultsby noted that plaintiff was reporting neck pain, but added, that the neck/should/arm discomfort plaintiff complained of was identical to the severe pain plaintiff complained of when previously seen on April 6, April 22, and May 6, 2004. According to Dr. Maultsby when he examined plaintiff on February 3, 2005, he performed a Jamar strength test to assess for valid weakness and found submaximal effort on that test both left and right, which suggested that there was some degree of symptom magnification. It was also noted that Dr. Harris had released plaintiff to return to full duty work and that plaintiff was performing those job duties.
18. On February 7, 2005, plaintiff retuned to Dr. Harris at Clinton Urgent Care, who reviewed the CT scan findings and noted that plaintiff had degenerative joint disease of her thoracic and lumbar spines. *Page 7 
19. On February 10, 2005, plaintiff again returned to Dr. Harris and reported that the pain in her upper to mid back was gone now but that she had a new complaint of pain in her lower back. Plaintiff reported the onset of this low back pain as 1 week prior. According to Dr. Harris this was the first mention of low back pain plaintiff had made to her. Dr. Harris testified that there was no new injury reported as precipitating this new low back pain complaint. At this visit, Dr. Harris also noted that plaintiff was suffering from depression. Dr. Harris wrote plaintiff out of work from February 10, 2005, thorough February 20, 2005. However, Dr. Harris testified that this out of work period was due to plaintiff's low back pain and depression.
20. Plaintiff did not return to see Dr. Harris for her scheduled February 24, 2005, follow-up appointment and has not returned to see Dr. Harris any further.
21. Since February 10, 2005, plaintiff has sought treatment primarily at Tri-County Community Health Center with Dr. Shelley Janssen for a variety of conditions including complaints of ongoing lower back pain. On May 16, 2005, plaintiff underwent MRIs of her spine which revealed mild disc bulges throughout her spine but no acute herniations. Dr. Janssen referred plaintiff for a neurosurgical evaluation by Dr. Janssen in August 2005, but as of January 2006, plaintiff had not obtained this evaluation.
22. On March 10, 2005, plaintiff voluntarily terminated her employment with defendant-employer. Plaintiff testified that she was fired and chased off the premises. The greater weight of the evidence, however, does not support that assertion.
23. Johnny Smith, plaintiff's supervisor, testified that plaintiff voluntarily terminated her employment due to non-work-related medical problems. Mr. Smith identified the HR Transaction Notice he prepared which states, "Ester quit Thurs. 3-10-05. She had been having medical problems." The stipulated medical evidence shows that plaintiff actually went to *Page 8 
Sampson Regional Medical Center on March 10, 2005, for a mammogram for a lesion recently discovered on her right breast. Based on the greater weight of the competent evidence, plaintiff voluntarily terminated her employment on March 10, 2005, due reasons unrelated to her compensable injuries.
24. Plaintiff has not looked for any other employment since quitting her job at defendant-employer on March 10, 2005.
25. Dr. Harris opined to a reasonable degree of medical certainty that the cause of plaintiff's low back pain was degenerative joint disease and that the low back pain was not casually related to the November 28, 2004, accident. Likewise, Dr. Harris opined that the November 28, 2004, accident did not cause plaintiff's depression which began manifesting itself in February 2005.
26. Dr. Harris did not know whether plaintiff would require ongoing medical treatment for her cervical and upper thoracic conditions but that, based on the last clinical visit on February 10, 2005, she expected that plaintiff would recover.
27. Dr. Harris opined that plaintiff was not entitled to a permanent partial disability rating for the work injury to her cervical and upper thoracic spine. *Page 9 
28. In the opinion of Dr. Harris, considering plaintiff's pre-existing history of ongoing upper back and neck pain, it was more likely than not that her problems in that area were not related to the November 28, 2004, accident. Dr. Harris added that the November 28, 2004, accident seems to have aggravated plaintiff's pre-existing neck and upper back condition, but Dr. Harris specifically opined that any such aggravation had resolved by February 10, 2005, and therefore any disability or problems after February 10, 2005, were not related to the accident.
29. Dr. Maultsby had no reason to disagree with the testimony of Dr. Harris that the November 28, 2004 accident aggravated plaintiff's pre-existing neck and upper back condition. He also agreed with Dr. Harris that any such aggravation had resolved by February 10, 2005 and that any ongoing problems were not work related.
30. Based upon the greater weight of the competent, credible evidence, on November 28, 2004, plaintiff suffered an aggravation of her pre-existing neck and upper back condition, which resolved by February 10, 2005. Plaintiff did not suffer any permanent partial impairment to her neck and upper back as a result of her November 28, 2004 injury by accident.
31. Plaintiff was written completely out of work due to her compensable neck and upper back condition from January 17, 2005 through January 24, 2005.
32. It is further found that plaintiff's low back pain and depression are not casually related to the November 28, 2004 incident.
33. Plaintiff is not entitled to any further medical treatment for her compensable neck and upper back condition.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of employment. Henry v. A.C. Lawrence LeatherCo., 231 N.C. 477, 57 S.E.2d 760 (1950). *Page 10 
Plaintiff has shown that she sustained an aggravation of her pre-existing neck and upper back condition on November 24, 2005.Click v. Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980). However, plaintiff has failed to carry the burden of proving by competent evidence that a causal relationship existed between the work-related accident and her lower back condition and depression. Id.
2. Once a claim has been found compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendant to prove that the medical treatment is not directly related to the compensable injury.Parsons v. Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997). An employer's payment of compensation pursuant to a Form 60, as in the case before us, is an award of the Commission and that the Parsons
presumption applies. Perez v. American Airlines, 174 N.C. App. 128,620 S.E.2d 288 (2005), disc. review improvidently allowed 360 N.C. 587,634 S.E.2d 887 (2006). In the case at bar, the Parsons presumption creates a rebuttable presumption that plaintiff's current neck and upper back condition is causally related to the compensable injury by accident.Id.
Defendants have shown through the competent evidence that any medical treatment plaintiff sought after February 10, 2005 was not directly related to the compensable injury. Therefore, plaintiff is not entitled to further benefits, including medical treatment, after February 10, 2005.
3. Plaintiff is entitled to temporary total disability benefits from January 17, 2005 through January 24, 2005. Even though the parties agreed that plaintiff's average weekly wage would be stipulated by the parties following the evidentiary hearing, the parties have failed to do so. The parties are obligated to stipulate to plaintiff's average weekly wage as agreed in the pre-trial agreement. N.C. Gen. Stat. § 97-29.
 *********** *Page 11 
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. If not already paid, defendants shall pay temporary total disability benefits to plaintiff at the agreed upon rate from January 17, 2005 through January 24, 2005.
2. Plaintiff's claim for further indemnity and medical benefits concerning her cervical and upper thoracic conditions subsequent to February 10, 2005, is hereby DENIED.
3. Plaintiff's claim for benefits concerning her low back condition and depression is hereby DENIED.
4. An attorney's fee for plaintiff's former counsel shall be reserved for consideration at the conclusion of this matter.
5. Each side shall bear its own costs.
6. If not already paid, defendants shall pay the expert witness fees of Dr. Harris and Dr. Maultsby.
This the 21st day of April, 2008.
S/___________________
DIANNE C. SELLERS
 COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ A KRANIFELD MAVRETIC COMMISSIONER